NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar #13644
STEPHANIE N. IHLER
Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
(702) 388-6336
Stephanie.Ihler@usdoj.gov

*Attorneys for United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEVARIAN HAYNES,<br><br>Defendant. | Case No: 2:20-mj-00464-BNW<br><br>**Government's Emergency Motion for Revocation of Magistrate Judge's Release Order Pursuant to 18 U.S.C. § 3145(a) (ECF No. 23)**<br><br>**(Expedited Treatment Requested)** |

The United States of America, by and through Nicholas A. Trutanich, United States Attorney, and Stephanie Ihler, Assistant United States Attorney, hereby moves this Honorable Court, pursuant to 18 U.S.C. § 3145(a), for an Order revoking the release order entered by United States Magistrate Judge Brenda Weksler on June 8, 2020. *See* ECF No. 23. Based on the nature of the relief sought and the fact that the Magistrate Judge has released the defendant back into the community, the government respectfully requests expedited treatment and a hearing on this Motion as soon as practicable. For the reasons set forth below, the government requests that the District Court revoke the order of release and enter an order detaining the defendant, as the evidence demonstrates that he present a significant risk of danger to the community and a serious risk of flight.

...

1

## I.     FACTS SURROUNDING THE INSTANT CASE

The offense charged in the complaint occurred just after midnight on May 31, 2020. Las Vegas Metropolitan police officers had parked police patrol units in the area of East Carson and South 9th Street, which is a mixed residential and business area. Police were in the area due to the protests relating to the death of George Floyd. Seeing the parked unattended patrol units, the defendants poured a flammable liquid, believed to be gasoline, from a red gas can into the broken or missing window of one of the patrol units, used a butane lighter and a white unidentified object to ignite the liquid, then threw the gas can with additional flammable liquid into the police car, causing a conflagration that required the Fire Department to suppress and extinguish it, and causing a risk of explosion as well as irreparable damage to the vehicle. The defendants videoed themselves in the act of setting the fire and posted it to social media. *See* Exhibit 1[1].

Exhibit 1 (the video) shows that defendant Walker poured liquid from the red gas can onto a white object. The defendants can be heard discussing pouring the liquid directly on the patrol vehicles. Walker approached the patrol vehicle, where he was joined by defendant Haynes who was carrying the gas can. The video shows that Walker ignited the white object using a butane lighter through a broken or missing front passenger side window.

Walker stood next to Haynes while Haynes then poured liquid from the gas can through the broken window into the vehicle. Walker dropped the white object, which was on fire, into the patrol vehicle. Haynes dropped the gas can inside the patrol vehicle. As the fire ignited, the

---

[1] The government will be submitting a manual filing of Exhibit 1 & Exhibit 2 on Wednesday, June 10, 2020, but due to the request for expedited treatment, the government will email the court clerk and defense counsel copies of the video.

2

sound of an approaching police siren can be heard. The defendants fled on foot as the video immediately ends. Defendant Densmore was the individual videoing these acts.

Upon arrest and post-*Miranda*, on June 3, 2020, each defendant was interviewed and admitted setting the police vehicle on fire.

The government has learned from law enforcement agents that the defendants stated that they came to the area to hang out with some females. They could only identify one female by her snapchat name. They admitted that at some point after damaging the patrol cars, it was decided that they would purchase gasoline to burn the patrol units. Defendants Densmore and Walker then drove to a nearby gas station to fill the red canister. Defendant Haynes, who was aware of the plan to burn the patrol cars, stayed in the area.[2]

## II.     RELEVANT PROCEDURAL HISTORY

On June 4, 2020, the government filed a complaint against defendants Tyree Walker ("Walker"), Devarian Haynes ("Haynes"), and Ricardo Densmore ("Densmore"), charging all defendants with one count of Conspiracy to Commit Arson, in violation of 18 U.S. C. § 844(n) and Arson, in violation of 18 U.S.C. §§ 844(i) and 2. *See* ECF No. 1. All defendants made their initial appearances on the complaint on June 5, 2020.

At the detention hearing, Pre-Trial Services[3] recommended detention for defendant Haynes as "a risk of nonappearance and danger to the community, as there is no condition or combination no conditions that would reasonably assure defendant's appearance at future court proceedings or the safety of the community." The pre-trial services report stated that the recommendation to detain was based in part on unresolved concerns about the inability to

---

[2] The government stated on June 8th during the hearing that all three defendants went to the gas station. The government believes that while Haynes knew of the planned arson, he did not actually travel to the gas station with the other two defendants.
[3] The Government is referring to Pre-Trial Services' initial report issued on June 3, 2020.

3

verify any of defendant Haynes' information as a result of not having enough time to interview him before the detention hearing began. Counsel for Defendant Haynes requested to continue the hearing to Monday, June 8, 2020 so that pre-trial would be able to interview Haynes and verify his information. The detention hearing was continued to June 8, 2020, at 4:30 p.m. *See* ECF No. 17.

On June 8, 2020, Pre-Trial submitted a supplemental report. In the supplemental report, pre-trial listed multiple concerns for both risk of danger and risk of flight, but ultimately recommended release.

At the hearing on June 8, 2020, the government noted that the charged offense of arson, 18 U.S.C. § 844(i), is among the enumerated offenses carrying a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond, and therefore gives rise to a presumption of detention.[4] The government argued that the defendants had purchased the gasoline with the intent to commit the arson to undercut the notion that this occurred because the defendants were 'caught up in the moment[5]' and just started a fire. This is especially true for Haynes, as he was the individual that poured the gas from the gas can into the police vehicle. Additionally, the government learned that Haynes was arrested at a hotel he was staying at, and not the residence where he resided, and that this went to support the argument for risk of flight. The government requested Haynes be detained as a risk of flight and a danger to the community. The government based its argument on the

---

[4] The fact that the Arson charge gives rise to a rebuttable presumption for detention was mentioned for the first time in front of Magistrate Judge Weksler on June 8, 2020 during the continued detention hearing; it was not addressed during the hearing on Friday, June 5, 2020.
[5] It is the government's belief that the defendants went to the area for the primary purpose of meeting the females and the plan to commit the arson was made sometime after the damage was done to the patrol units. As stated, Densmore and Walker travelled to get the gasoline and bring it back to the area.

4

serious nature and circumstances of the offenses charged including the potential penalties, the overwhelming weight of the evidence, the history and characteristics of Haynes—including his multiple prior failure to appears, criminal history, and substance and mental issues—and danger to the community if he were released.  Haynes requested release with conditions, arguing significant family ties and that conditions could be fashioned to mitigate danger to the community or risk of flight.

Magistrate Judge Weksler agreed that this was a presumption case, but found that Defendant had met his burden of production.  She also noted that she felt that Hayne's situation was an incredibly close call, but because the Bail Reform Act requires her to give deference to the defendant, she found that the government had not met its burden to establish that Haynes posed a risk of flight or danger to the community. Magistrate Judge Weksler provided numerous reasons in support of her decision for release. Magistrate Judge Weksler stated that the charges were very serious offenses with a lengthy potential penalty, and that the weight of the evidence was strong and favored the government (citing the video of the events and Haynes' confession).

As to the circumstances of the offense, she noted that "context was particularly important" and that "the emotions regarding this situation are very high across the world." However, she also went on to say that the "context in which this happened, is something the court must consider." Magistrate Judge Weksler did agree that the timing of the purchase of the gasoline could show intent.

With respect to Haynes' history and characteristics, the Magistrate Judge noted that she was concerned by Haynes' discharge from the army because "it shows discipline and problems resulting from discharge from military." Magistrate Judge Weksler noted that it appeared Haynes had strong family ties (specifically his parents in Houston and wife in Las Vegas) and

that he could reside with his wife if released.  She also considered his potential need for substance abuse and mental health treatment, noting that his parents believed he would benefit from treatment and that would be something that needs to be addressed.

Lastly, the Magistrate Judge said what made her determination such a close call was Haynes' prior criminal history.  She noted that he had a conviction for assault in January 2017. Haynes was also convicted by court martial of assault and drunk and disorderly conduct and ultimately discharged from the army for such offense. He was then arrested for criminal mischief in 2017 (which was ultimately dismissed).  The Magistrate Judge then looked to his 2019 history, and stated she was concerned with his failure to appear.  She found that one failure to appear took place two days after the incident, one bench warrant was issued based on non compliance with a class required as part of his probation, and one was issued for not paying fines.  She also found that he was arrested in October 2019 for Domestic violence, but noted that the charge was ultimately reduced to disturbing the peace.  The magistrate judge stated Haynes' criminal history is what she found most concerning, but said she was taking into account that the violent behavior is from 2017 and October 2016.

### III.    LEGAL STANDARD

Upon appeal under 18 U.S.C. § 3145(a), the District Court with original jurisdiction over the charged offense has jurisdiction to review a Magistrate Judge's release *de novo*, with no deference to the Magistrate Judge's decision. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990); *see also United States v. King*, 849 F.2d 485, 491 (11th Cir. 1988); *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (en banc); *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).   The District Court may also hear additional evidence and argument if it so chooses.  *Id.*

On a motion for pretrial detention, the government bears the burden of showing that the

defendant is either a danger to the community by clear and convincing evidence or that defendant is a risk of flight by a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 406-07 (9th Cir. 1985).

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g). The charged offense of Arson, 18 U.S.C. § 844(i), is among the enumerated offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond, *see* 18 U.S.C. §§ 3142(e)(3)(C), 2332b(g)(5)(B), and therefore gives rise to a presumption of detention. This presumption may be rebutted by the defendant, provided the defendant is able to present evidence that he is neither a danger nor a risk of flight. See *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). Even upon such a showing, however, the presumption in favor of detention "does not disappear entirely, but remains a factor to be considered among those weighed[,]" *id.*, because it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial" and "represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." *United States v. Stone*, 608 F3d 939, 945-946 (6th Cir. 2010) (internal quotation marks and citation omitted) (ellipsis in original).

## IV.     ARGUMENT

The factors to be considered in the detention analysis show that defendant Haynes presents a severe and ongoing danger to the community and a serious risk of flight if continued

released on bond. Because the law presumes that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community, the government requests that Haynes be detained as a danger and a flight risk pending trial.

  a. **Nature and Circumstances of the Offenses Charged and Weight of the Evidence.**

In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a crime of violence, a Federal crime of terrorism, or a crime involving an explosive or destructive device. See 18 U.S.C. § 3142(g)(1).

Indeed, Congress recognized the seriousness of the charged offense by specifically enumerating 18 U.S.C. § 844(i) among those offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond. Specifically, Section 844(i), which carries a maximum term of 20 years imprisonment, is "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed," see 18 U.S.C. § 3142(e)(3)(C), and therefore gives rise to a presumption of detention.

Defendant Haynes faces a mandatory minimum sentence of five years in prison and up to a maximum sentence of twenty years. The prospect of a lengthy term of incarceration may cause the defendant to flee. *United States v. Dodge*, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

With regard to the nature of the offense, Arson is a dangerous crime—particularly when a fire is set during protest. It is dangerous not only the first responders, but also to peaceful protesters and innocent bystanders, businesses, and residences in the area. In this case, the defendant set fire to a police car, apparently without regard to potentially igniting the car's gas tank or any ammunition in the vehicle, causing even more destruction and requiring additional

first responders to navigate their way through an already chaotic scene.

The weight of the evidence in this case is overwhelming. The defendants recorded themselves laughing and setting fire to the LVMPD vehicle. Moreover, the defendant made a post-*Miranda* confession. Although weight of the evidence is not accorded as much weight in this analysis, 18 U.S.C. § 3142(g) nevertheless requires the Court to consider the nature of the offense and evidence of guilt, and may be considered in relation to the likelihood that a defendant will pose a danger to the community if released. *See Motamedi*, 767 F.2d at 1408 (9th Cir. 1985); *cf. United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986) ("[e]vidence of guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community").

The fact that the defendant participated on video in an arson to which he confessed, and the severity of the punishment he faces if convicted, cause this factor to weigh heavily in favor of detention.

b. **Defendant Haynes History and Characteristics**

Defendant Haynes' history and characteristics both weigh heavily against release.  Specifically Haynes' substance abuse and mental health history, criminal history including past failures to appear, his recent residential history as well as the fact that his wife would not be an appropriate third party custodian are all factors that support detention.  Under 18 U.S.C. § 3142(g), courts may consider "the history and characteristics of the person, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, [and] record concerning appearance at court proceedings." *Motamedi*, 767 F.2d at 1407.

As to Haynes' criminal history, this strongly weighs in favor of detention. Haynes has

been arrested for assault and intoxication offenses on numerous occasions. On October 22, 2016, Haynes was arrested of Assault while he was serving in the US Army. Three months later, on January 18, 2017, Haynes was arrested and subsequently convicted for Assault and for Drunk and Disorderly Conduct by the United States Army. One month later, Haynes was arrested by the Army again, for Assault By Battery, Drunk and Disorderly. As a result of this arrest, Haynes was ultimately convicted and received a Chapter 14 Discharge from the US Army. On April 4, 2017, Haynes was arrested for Wrongful use of Marijuana. Two months later, on June 25, 2017, Haynes was arrested for Criminal Mischief Assault 3 and Public Order Crimes of Obstruct Service.

Haynes' criminal conduct did not cease once he was discharged from the Army and relocated to live with his wife in Las Vegas. On May 26, 2019, he was arrested and subsequently convicted by North Las Vegas Police for Driving Under the Influence (DUI). He received a suspended sentence. While on probation for the DUI, bench warrants were issued for Haynes on at least three occasions separate occasions within the span of six months. One of the bench warrants was issued as a result of Haynes' failure to abide by the rules of probation specifically not following through with his VIP classes. This is of note for detention purposes, because it goes to support the fact that if released, Haynes would not be willing to seek and follow through with treatment, or abide by the rules of pre-trial. Haynes also received a failure to appear in a separate matter on October 8, 2019, specifically for what appears to be a traffic related offense.

Most recently, Haynes was arrested on October 7, 2019 for Domestic Battery. The charge was ultimately reduced and on January 27, 2020, the charge was convicted of Disturbing the Peace. Of particular significance is the fact that the victim in this case is defendant Haynes' wife, who the same person that Haynes has requested to reside with and to

be his third party custodian. While the government acknowledges that both Haynes and his wife told pre-trial that the incident "was just an argument," the government believe this claim would hold more weight if Haynes hadn't been arrested for assault on many other prior occasions. As a result, Haynes' criminal history demonstrates a pattern of repeated arrests for violent and substance related offenses. Moreover, it shows that Haynes is unable to learn from his mistakes and that being arrested or charged for an offense is not a sufficient consequent for him to stop committing additional criminal acts.

As to Defendant Haynes' mental health history, Haynes told pre-trial that he had been recently been diagnosed with anxiety and depression. He also said that he had been prescribed medication, but didn't take it because he did not like the effect it had. Haynes additionally claimed that even though he stopped taking the medication, he did continue engaging in therapy without medication and his symptoms improved. When Pre-trial Services spoke with Haynes' father, he stated that Haynes needs mental health treatment, but fears he will not engage on his own because he had previously sought treatment and failed to follow up. Haynes' father explained that he knew Haynes had failed to do any sort of follow up because the psychiatry team contacted him personally and informed him that his son had missed the follow-up appointments. This is concerning not only for mental health related reasons, but because it shows that Haynes lied to Pre-Trial Services about his prior actions. As a result, it demonstrates a willingness to not be honest with Pre-Trial Services about his mental health issues and need for treatment.

As to Defendant Haynes' substance abuse history, it appeared from the pre-trial report that he attempted to minimize his substance abuse problem. Haynes stated that he used marijuana "on and off," and that he hadn't used alcohol in three months. However when asked about whether he had ever previously sought treatment, he admitted he went through a military

self-help program as a result of disciplinary action regarding substance abuse. However, that version is very different from the way both Haynes' parents and his wife describe his substance abuse issues. His wife told pre-trial he "uses marijuana like other people smoke cigarettes." Both parents believe he would benefit from substance abuse treatment. Additionally, his father told Pre-Trial Services that he believes Haynes is self-medicating his mental health symptoms by using marijuana.

Haynes' substance abuse and mental health history is concerning to the government, especially when viewed in combination with his criminal history. Haynes' criminal history shows a pattern being arrested for violent offenses when he is also under the influence. As a result, his history shows that when he is under the influence, he has a tendency to act out in a violent manner. As a result, his current substance abuse and mental health issues strongly suggest he would be not only a risk of flight, but a potential risk to the safety of the community if released.

As to Haynes' residence, while the government acknowledges that his wife has confirmed he could reside with her if released, the government believes this residence is not appropriate. First, it is important to note that Haynes told law enforcement that he was separated from his wife. His wife is the victim in his most recent arrest for assault, and in the conviction for disturbing the peace. Although as stated, both claim it was "was just an argument," the government might accept this assertion if Haynes did not have a history of assaultive behavior. Additionally, even assuming that it was just an argument, the government believes it still causes concern as that "the argument" progressed to the point that the police were called and Haynes was arrested. The government therefore submits that Haynes' wife is not an appropriate third party custodian as she is likely not able to control Haynes' behavior and it is not clear she is in a position to report any illegal conduct having been a possible victim

of domestic assault.

Haynes' wife told pre-trial that since the argument, there have been no other issues. Haynes and his wife told pre-trial that prior to arrest, he had been residing together at their residence. This is concerning because Haynes was arrested not at his residence, but at a hotel he had been staying at since May 29, 2020. The government has confirmed that the hotel was registered in Haynes' name. Registration paperwork shows Haynes checked into the hotel on May 29, 2020, and was scheduled to check out on June 4, 2020. As a result, during his interview with police, Haynes was asked about where he had been staying. Haynes told police that he no longer lived with his wife because they were separated.

Haynes did not have a steady place of residence prior to being arrested. The fact that Haynes' wife as well as Haynes did not disclose that information to Pre-Trial Services further demonstrates that she is not an appropriate third party custodian because she is not willing to be completely honest and forthcoming.

Lastly, as to Haynes' employment, the fact that Haynes does not plan on returning to any sort of employment also weighs against release. Although he claims that he could potentially return to work at his former place of employment, this assertion was not verified because he told Pre-Trial that he did not plan to return.

**c. Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Person's Release**

Defendant Haynes poses a severe and ongoing risk to the community. His actions were not confined to an isolated incident. A second video recording demonstrates that the defendants caused damage to LVMPD vehicles at least three different times on the night of the offense. *See* Exhibit 2. First they stood on the car, then they bashed in a windshield and window of the police vehicle (or so they joked in the video), then in the last incident the defendants chose to

destroy the vehicle completely by lighting it on fire, with defendant Haynes pouring the gas into the patrol unit. Even more concerning than just the number of incidents, is the escalation of violence with each offense. This escalating behavior shows the acts became gradually emboldened and dangerous, and cuts against any argument that the defendant was just caught up in the moment or felt remorse for his actions.

Additionally weighing against release is the risk that Haynes may engage in similar conduct at future protests if released. The circumstances of the offense shows that he was acutely aware of the danger his actions posed to the public, yet he acted in total disregard of the law. Neither an order of home confinement or GPS monitoring is a physical tether that would prevent defendant Haynes from leaving his residence to participate in additional violence.

For Defendant Haynes, his past history shows that arrests do not prevent future illegal conduct. His history shows that being arrested or charged with a crime is not a deterrence to prevent him from continuing to commit similar acts once released. If you look to Haynes' prior criminal history, it shows repeated instances of being arrested for assault and/or some sort of drunk and disorderly conduct, and then being arrested for similar behavior within the span of a month or two. There is simply no reason to believe that because of this federal indictment, Haynes would suddenly stop repeating his history of failing to appear or committing similar conduct shortly after being arrested. Similarly, there is nothing to show that Haynes' wife is suddenly be able to ensure his return to court and prevent him from being a danger to the community when she was unable to before.

### V. CONCLUSION

Defendant Haynes has failed to meet his burden, as the facts demonstrate by clear and convincing evidence that no condition or combination of conditions can be fashioned to combat the nature and seriousness of the danger that Haynes' release would pose to any person

or the community.  Furthermore, the government has met its burden by a preponderance of the evidence that there are no conditions or combination of conditions that will reasonably assure the defendant's appearance.  While the defendant spent considerable time arguing about ties to the community or a place to reside in his effort to rebut the presumption related to risk of flight, the person with whom he wishes to reside with is not an appropriate third-party custodian. Additionally Haynes offered no evidence or argument to show that he is not a danger to the community.  His mental health issues are a great concern to the government. Absent any evidence that he does not pose a risk that can be mitigated by conditions, Haynes has not met his burden of production.

When considering all four factors under the Bail Reform Act, and the how heavily the first, second, third, and fourth factors weigh in favor of detention, Haynes' arguments are insufficient to overcome the overwhelming evidence showing that he is a danger to the community such that no release condition or combination of conditions can adequately safeguard against the risk posed by release.

The United States therefore, respectfully asks this Court to overrule the Magistrate Judge's order releasing defendant Haynes pending trial and order him detained.

DATED this 9th day of June, 2020.

Respectfully submitted,

NICHOLAS A. TRUTANICH
United States Attorney

*/s/ Stephanie N. Ihler*
STEPHANIE N. IHLER
Assistant United States Attorney