CHRISTOPHER S. MISHLER (14402)
BROWN MISHLER, PLLC
911 N. Buffalo Dr., Ste. 202
Las Vegas, Nevada 89128
(702) 816-2200
CMishler@BrownMishler.com
*Attorney for Devarian Haynes.*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEVARIAN HAYNES,<br><br>Defendant. | 2:20-cr-0126-APG-VCF<br><br>**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING** |

Defendant Devarian Haynes submits the following memorandum in support of a sentence of 24 months in prison followed by three years of supervised release, a fine of $100.00, and 100 hours of community service. Such a sentence is sufficient but not greater than necessary, and is the joint recommendation of both the government and defense.

## MEMORANDUM IN AID OF SENTENCING

### INTRODUCTION

Devarian Haynes is a 25 year old man; he has served his country in the Army and has a young boy of his own, King Haynes, age four. He is before this Court for his self-acknowledged error in judgment regarding his involvement in the burning of a Las Vegas Metro Police vehicle during the protests which occurred in Las Vegas related to the death of George Floyd. Mr. Haynes regrets

1

his actions and realizes that he was caught up in the outrage over police involvement in Mr. Floyd's death. Mr. Haynes immediately accepted responsibility for his actions from the moment he was interviewed by investigators, immediately admitting his role. Further, Mr. Haynes has at all points in the case admitted responsibility for his actions, and the delay in resolution of this case was only the result of counsel seeking to obtain the best resolution possible, rather than Mr. Haynes trying to diminish his role or his responsibility for his actions.

We all recall the time period of May 2021, and the universal outrage caused by the police killing of George Floyd. There were protests all around the country including many here in Las Vegas, one of which was the impetus for Mr. Haynes actions. Further, many people had been inside their homes for many months at this point due to COVID lockdowns and State policies. It was a time where people were living in bubbles, without regular interaction with other people and many people saw the videos of George Floyd's death and the outrage sparked by it reverberated in the bubble, without people to talk with and discuss their feelings over the death, many people's outrage kept escalating and caused the protests to sometimes get out of hand, as this protest did.

This information is provided only to provide a backdrop for Mr. Haynes actions, not to justify or excuse his behavior. He acknowledges that he was wrong and does not seek to diminish his role in the events of May 31, 2020.

# BACKGROUND

## A. Mr. Haynes' background

Mr. Haynes' parents divorced when he was 2 years old.[1] He maintains a very close relationship with his father, Godwin Haynes, who has been acting as his third-party custodian while he is on release; his mother, Yumika Williams, at whose house Mr. Haynes has been staying while under house arrest; and his siblings (5 siblings), all of whom are aware of his offense and remain supportive.[2]

Mr. Haynes' family is very supportive of him and acknowledge that he has made mistakes in his past, but feel that recent events have opened his eyes to the necessary steps to implement real change and turn his life around. They plan to remain supportive of him throughout his sentence and assist him in transitioning back to a productive member of society following his release.

While Mr. Haynes has a drinking and substance abuse problem, continuing while on pre-trial release[3], he appears to have finally come to the realization that he has a drinking and substance abuse problem which causes him to make poor decisions which hurt himself and other people. He has successfully completed treatment as part of his release conditions and

---

[1] PSR ¶ 73

[2] PSR ¶ 71 and 72

[3] PSR ¶ 96 and 101

3

continues to regularly attend meetings by video as part of his treatment regime[4].

In addition, Mr. Haynes has acknowledged and confronted his mental health issues[5]. He acknowledged to counsel that he had some PTSD related to abuse he suffered at the start of his pre-trial release in this case, which resulted in his transfer to Texas, but has worked through the issues in counselling and knows what he needs to do to avoid being triggered again, and how to deal with further issues he experiences as a result of that trauma.

Following his release for the instant offense, Mr. Haynes would like to pursue training in commercial truck driving, a profession in great demand at this time, due to a shortfall in trained drivers. This would provide him with stable employment, allowing him to become a contributing member of society and to provide support for his son.

**B. The offense**

Mr. Haynes admits to bad judgment when he decided to turn what had been a peaceful protest of George Floyd's death into a chaotic and inexcusable decision to light a LVMPD vehicle on fire. Without excusing his behavior, but only to offer explanation he notes that cumulative factors played into his poor decision.

These factors include: his understandable outrage over the deaths of

---

[4] PSR ¶ 102

[5] PSR ¶ 88-93

4

George Floyd, Brianna Taylor, and Ahmed Arbury and his perception that police were killing black people; his isolation during COVID and subsequent inability to discuss these deaths with people and resolve his feelings about them; and being caught up in the group protest and outrage over the killings, which only further exacerbated his feelings of outrage and anger, ultimately resulting in his splintering off from the protest and becoming involved with the LVMPD vehicle.

These factors conspired to convince Mr. Haynes to make this poor decision and he thought at the time that it was justified, due in large part to the heat of the moment and the surging emotions from the crowd of protesters. Following the events of May 21, 2020, however, he quickly realized that he had made a terrible mistake and was afraid of the consequences he knew he would face. He was interviewed by investigators within a few days and quickly admitted to his role and accepted responsibility for his actions.

Mr. Haynes is aware that he made a bad decision at the time and wishes he could go back and do it over. Being unable to do so, he has done the only thing he can at this point to rectify the situation, he has accepted the responsibility for his actions and wants to move forward as quickly as possible.

## ARGUMENT

The Supreme Court's decision in *Gall v. United States* sets forth

the three-step process for sentencing courts:[6] First, the court properly determines the guideline range.[7] Second, the court considers any departures from the range, including, as relevant here, acceptance of responsibility, to arrive at the final advisory guidelines range.[8] Third, the court reviews the sentence under its *Booker* authority using the factors identified in § 3553(a), including whether any variances are warranted.[9] The result must be a sentence that is "sufficient, but not greater than necessary," to achieve the four purposes of sentencing: retribution, deterrence, incapacitation, and rehabilitation.[10]

That standard is satisfied in this case by a sentence of twenty-four months of prison time, a $100.00 fine, and 100 hours of community service, followed by three years of supervised release. This is acknowledged by the government in their joint recommendation and best serves the interests of justice.

**A. The applicable advisory guidelines range**

---

[6] 552 U.S. 38, 49 (2007) (the district court should begin all sentencing proceedings by correctly calculating the applicable guideline range, and "to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."); *see also* USSG § 1B1.1(a)–(c) (Application Instructions).

[7] *Id.*; 18 U.S.C. § 3553(a)(4).

[8] 552 U.S. at 50; 18 U.S.C. § 3553(a)(5).

[9] *See* USSG § 1B1.1(c); *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005); *United States v. Stone*, 432 F.3d 651, 655 (6th Cir. 2005).

[10] *See* 18 USC § 3553(a)(2).

6

As set forth in the Presentence Report[11], and plea agreement[12] the adjusted offense level is 21, and Mr. Haynes Criminal History Category is III[13], which corresponds to a Guidelines range of 46-57 months.

### B. Under the § 3553(a) factors, a downward variance from the guideline range to a 24 month sentence is sufficient but not greater than necessary

Title 18 section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to achieve the four purposes of sentencing (retribution, deterrence, incapacitation, and rehabilitation[14]); in doing so, courts consider relevant § 3553(a) factors.[15] Those factors, discussed below where relevant, point in this case to a sentence that is shorter on prison (24 months) and longer on supervision (three years supervised release) as sufficient but not greater than necessary to achieve the § 3553(a) sentencing goals.

### 1. A 24-month/three-year sentence is appropriate given Mr. Haynes offense and his history and characteristics

The first § 3553(a) factor is the nature and circumstances of the offense and the defendant's history and characteristics.[16] Mr. Haynes offense, Civil

---

[11] PSR at 49.

[12] Plea Agr. ¶ 10 and 11.

[13] PSR ¶ 62.

[14] *See* 18 USC § 3553(a)(2).

[15] *See* 18 U.S.C. § 3553(a)(1)-(7).

[16] *See* 18 U.S.C. § 3553(a)(1).

7

Disorder, is serious, but he quickly admitted to his conduct and accepted responsibility early for that mistake. This § 3553(a) factor justifies a downward variance to a sentence below the guideline range of 24 months, a $100.00 fine, and 100 hours of community service, with three years of supervised release.

### 2. A 24-month/three-year sentence furthers the four purposes of sentencing

The second § 3553(a) factor relates to the need for a sentence to further the four purposes of sentencing: retribution, deterrence, incapacitation, and rehabilitation.[17] These goals are sufficiently served by a 24-month/three-year sentence.

*Retribution.* In the sentencing context, "retribution" refers to the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense …."[18] In terms of seriousness, lighting a LVMPD vehicle on fire is serious. While such an offense is serious to be sure, it is not a crime of naked greed or calculating malevolence of the sort that requires a harsh prison sentence to exact sufficient retribution or promote respect for the law, and a 24-months/three-year sentence would therefore be sufficiently retributive.

*Deterrence.* The need for a prison sentence to further the goal of deterrence must be considered in light of the fact that lengthy prison sentences

---

[17] *See* 18 USC § 3553(a)(2).

[18] *See* 18 USC § 3553(a)(2)(A).

8

have virtually zero deterrent effect, either on the defendant being sentenced (specific deterrence[19]), or on other would-be criminals (general deterrence[20]).

---

[19] Dispelling the notion of defendant-specific deterrence, the United States Sentencing Commission (the Commission) studied two cohorts of crack cocaine offenders—one that received 2-level-reduced sentences, and one that received heightened sentences—and found "no statistical difference" in recidivism rates. Chief Judge Patti B. Saris, Chair, United States Sentencing Commission, Speech to Georgetown University Law Center: "A Generational Shift for Drug Sentences," March 26, 2014. (Available at: https://www.ussc.gov/sites/default/files/pdf/training/online-learning-center/supporting-materials/Saris-Georgetown-Law-Center-Speech-20140326.pdf).

[20] Historically, empirical research shows that, while *certainty* of getting caught and punished deters crime generally, simply imposing harsher sentences does not, essentially because would-be criminals are not rational actors; they don't believe they'll be caught and convicted, and they aren't aware of the potential penalties if they are. *See* Michael Tonry, PURPOSES AND FUNCTIONS OF SENTENCING, 34 Crime & Justice 1, 28–29 (2006) (citing articles published in 1980, 1998, 1999, and 2003) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence.") *Id*. More recent studies cast further doubt on the deterrent effect of harsh sentences. For example, a 2014 review by the National Research Council pointed out: "Three National Research Council studies have examined the literature on deterrence and concluded that insufficient evidence exists to justify predicating policy choices on the general assumption that harsher punishments yield measurable deterrent effects[] [and] [n]early every leading survey of the deterrence literature in the past three decades has reached the same conclusion [citations omitted]." Nat'l Res. Council, THE GROWTH OF INCARCERATION IN THE UNITED STATES: EXPLORING CAUSES AND CONSEQUENCES 90 (Jeremy Travis et al., eds. 2014) (Available at: https://johnjay.jjay.cuny.edu/nrc/NAS_report_on_incarceration.pdf). Most recently, a highly sophisticated 2018 study of 300,000 federally sentenced individuals found that a 28% increase in prison time would reduce recidivism by only 1%. *See* William Rhodes, et al., Relationship Between Prison Length of Stay and Recidivism: A STUDY USING REGRESSION DISCONTINUITY AND INSTRUMENTAL VARIABLES WITH MULTIPLE BREAK POINTS, 17 Criminology & Pub Pol'y 731, 754 (2018).

Relatedly, incarceration has, at most, a negligible effect on public safety.[21] Confirming the absence of a correlation between prison length and recidivism, sentencing *reductions* do *not* increase recidivism.[22] All of this is to say that, since sentencing Mr. Haynes to a lengthy prison term will not further the sentencing goal of deterrence, and shortening his prison sentence will not increase his likelihood of reoffending, the sentencing goal of deterrence is best served by a 24-month/three-year sentence.

*Incapacitation and rehabilitation.* These related sentencing goals refer to the need for a sentence to protect the public from Mr. Haynes further crimes,[23] and to provide him "correctional treatment in the most effective manner."[24] Importantly, courts may pursue these goals "not through a longer term of imprisonment, but through extensive counseling and treatment and an extensive period of supervised release."[25]

---

[21] Crime rates have trended downward since 1990, and researchers attribute 75 to 100 percent of these reductions to factors *other than* incarceration. *See, e.g.*, Don Stemen, "The Prison Paradox: More Incarceration Will Not Make Us Safer" (New York: Vera Institute of Justice, 2017), available at https://www.vera.org/publications/for-the-record-prison-paradox-incarceration-not-safer.

[22] *See* USSC, Recidivism Among Federal Offenders Receiving Retroactive Sentencing Reductions: The 2011 Fair Sentencing Act Guideline Amendment 3 (2018).

[23] *See* 18 USC § 3553(a)(2)(C).

[24] 18 USC § 3553(a)(2)(D).

[25] *United States v. Grossman*, 513 F.3d 592, 597 (6th Cir. 2008) (affirming a downward variance from 120 to 66 months with ten years' supervised release, and observing that the sentencing court "accounted for § 3553(a)'s concerns

10

Based on Mr. Haynes already successful treatment for both mental health and substance abuse, and lack of further violations of his pre-trial release conditions following the successful treatment, this appears to address this issue and a 24-month/three-year sentence is appropriate for his crime.

## CONCLUSION

In conclusion, the Court should sentence Mr. Haynes to a term of 24 months in prison, a fine of $100.00, and 100 hours of community service, followed by three years of supervised release. This is sufficient but not greater than necessary under the relevant § 3553(a) factors for an offender like Mr. Haynes. Further, Mr. Haynes requests that the Court recommend BOP designation to FCI Bastrop as first choice and FCI Three Rivers as second choice designations.

Date: June 9, 2022

Respectfully submitted:

/s/ *Christopher S. Mishler*
CHRISTOPHER S. MISHLER (14402)
BROWN MISHLER, PLLC
*Attorney for Devarian Haynes*

---

that the sentence protect society and deter future criminal conduct," but that "it opted to pursue those goals, not through a longer term of imprisonment, but through extensive counseling and treatment and an extensive period of supervised release").

11

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of BROWN MISHLER, PLLC, and that on June 9, 2022, I served the foregoing **DEFENDANT'S MEMORANDUM IN AID OF SENTENCING** via the district court's online e-filing and e-service platform.

By: /s/ *Christopher Mishler*
   An employee of
   BROWN MISHLER, PLLC